## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

REYNALDO MORENO CABRERA,

       Plaintiff,

   v.

MOGOO, INC., *et al.*,

       Defendants.

Case No. 22-cv-1816-TJK-MJS

## <u>REPORT AND RECOMMENDATION</u>

Plaintiff Reynaldo Moreno Cabrera ("Cabrera") worked for several years for Mogoo, Inc. ("Mogoo"), a family-owned construction company, on various construction projects in the greater D.C. region. In June 2022, Cabrera filed suit under the Fair Labor Standards Act ("FLSA"), the District of Columbia Wage Payment and Collection Law ("DCWPCL"), and other wage-related laws. He alleged that Mogoo and other defendants—including several Mogoo principals, John Gibbs, Jr., Mary Gibbs, and Jamie Gibbs (together with Mogoo, the "Mogoo Defendants"), and ENB, LTD ("ENB"), a general contractor on several projects—were liable for failing to properly pay his wages, including overtime wages, and failing to provide statutory sick leave. In July 2024, after years of litigation, Cabrera accepted a Rule 68 offer of judgment jointly proposed by the Mogoo Defendants and ENB. (*See* ECF No. 141.) The Rule 68 offer included reasonable attorney's fees and costs, but not in any fixed amount; instead, the offer provided that the court would determine the appropriate amount of fees and costs after briefing. That is the issue now pending. Cabrera's motions for fees and costs (ECF Nos. 145, 146, 160) were referred to the undersigned for a report and recommendation, and they are fully briefed and ripe for decision. Based on careful consideration of the relevant submissions and applicable law, the undersigned **RECOMMENDS**,

for the reasons below, that the Court **GRANT** Cabrera's motions in substantial part and award Cabrera, as the prevailing party, attorney's fees in the amount of **$170,009.95** and costs in the amount of **$2,427.48**, to be satisfied jointly and severally by the Mogoo Defendants and ENB.

## BACKGROUND

According to the Complaint, Cabrera worked for Mogoo—a family-owned and operated construction company based in the District of Columbia—between 2015 and 2020. (ECF No. 1, Compl. ¶ 1.) His work encompassed "general labor functions on construction projects," including "digging, pouring concrete, preparing areas for the pouring of concrete, mixing concrete, loading or unloading materials, or other, similar construction-related tasks." (*Id.* ¶¶ 1, 12.)

In June 2022, Cabrera sued the Mogoo Defendants, along with two general contractors on projects that he worked, ENB and Hamel Builders, Inc. ("Hamel Builders"), asserting violations of federal and D.C. law based on their alleged failure to properly pay Cabrera for all hours worked, including overtime wages, and failure to provide statutory sick leave.

In May 2023, Cabrera sought leave to file an amended complaint to add nine additional defendants—comprising other general or intermediate-level contractors on various jobs Cabrera worked with Mogoo—on the theory that they were jointly liable under the D.C. wage laws. (ECF No. 42.)[1] According to Cabrera, he hoped to join those other defendants much earlier in the case

---

[1] The additional defendants were: Cole Group LLC; Plano-Coudon, LLC; K L Development, LLC; RLP Investment Group, LLC; Fabion Construction, LLC; Ziba Management, Inc.; Harmony Remodeling 2 LLC; Eichberg Construction, LLC; and CBG Building Company LLC. (*See* ECF No. 60, Sec. Am. Compl.) Cabrera ended up voluntarily dismissing more than half the new parties, specifically: Eichberg Construction (ECF No. 78); Harmony Remodeling 2 (ECF No. 86; Sept. 15, 2023 Min. Order); Ziba Management (ECF No. 100); CBG Building (ECF No. 103); and Plano-Coudon (ECF No. 139). As to Plano-Coudon, specifically, Cabrera apparently recovered $10,000 in settlement prior to dismissal. (*See* Pl.'s Mot. at 3.) Otherwise, three of the later-added defendants—Cole Group, RLP Investment Group, and Fabion Construction—never appeared following service and so had default entered against them. (ECF Nos. 76, 112, 113.) K L Development, on the other hand, is defending against Cabrera's claims and filed a motion for summary judgment (ECF No. 122), which remains pending.

but was hamstrung because Mogoo would not identify the relevant contractors in response to discovery requests; Cabrera says he was only able to piece together that information after getting Mogoo's bank records during discovery in March 2023. In any case, the Court granted leave to file the amended complaint in July 2023. (*See* July 12, 2023 Min. Order.)

The prior month, in June 2023, Cabrera accepted a Rule 68 offer of judgment from Hamel Builders in the amount of $36,949.80 plus reasonable attorney's fees and costs to be determined by the court. (ECF No. 56.)[2] The Mogoo Defendants and ENB served a Rule 68 offer of judgment that same month, in the amount of $70,000 plus reasonable attorney's fees and costs, but Cabrera did not accept it. That unaccepted Rule 68 offer followed a prior unaccepted Rule 68 offer from those same defendants in October 2022, in the amount of $31,000 plus reasonable attorney's fees and costs. (*See* ECF No. 153-1 ("Defs.' Opp'n") at 3.)

Ultimately, in July 2024, Cabrera accepted the latest Rule 68 offer from the Mogoo Defendants and ENB—the third offer of judgment they proposed over the life of the case—that provides the backdrop for the current motions. (*See* ECF No. 141-1.) The Rule 68 offer allowed for entry of judgment against the Mogoo Defendants and ENB, jointly and severally, in the amount of $75,000 plus reasonable fees and costs to be determined by the court. (*Id.*) The offer, upon acceptance, provides for "full and final resolution of all claims" against the Mogoo Defendants and ENB. (*Id.*) And the offer confirms Cabrera would be considered a "prevailing party ... entitled to an award of reasonable attorneys' fees and costs," with the Mogoo Defendants and ENB to be "jointly and severally liable for the full amount of attorneys' fees and costs awarded[.]" (*Id.*)

---

[2] Cabrera subsequently moved to stay the deadline to file a motion for fees and costs as to Hamel Builders, and the Court granted such a stay "pending resolution of the rest of Cabrera's claims against the other defendants on the merits." (Aug. 8, 2023 Min. Order.) Cabrera has yet to file such a motion.

Following entry of judgment against the Mogoo Defendants and ENB in keeping with the Rule 68 offer, Cabrera timely filed his motion for fees and costs on September 4, 2024, seeking a total award of $185,740.35 in fees and $5,025.76 in costs. (ECF No. 145-1 ("Pl.'s Mem.").)

Shortly thereafter, Cabrera filed a supplemental motion for fees and costs, which warrants some additional context. Earlier in the litigation, ENB filed an unsuccessful motion for sanctions against Cabrera. (*See* ECF No. 46.) In denying ENB's motion, Magistrate Judge Upadhyaya ordered, under Fed. R. Civ. P. 11(c)(2), that ENB pay $10,421.68 in attorney's fees and costs to Cabrera for counsel's work opposing the motion. (July 12, 2023 Min. Order; ECF Nos. 62, 123, 124.) Thereafter, ENB unsuccessfully moved for reconsideration of Judge Upadhyaya's decision (*see* ECF No. 127), and ENB then lodged objections to that decision under Local Rule 72.2, which Judge Kelly denied on various grounds (*see* ECF No. 143). Cabrera's supplemental motion seeks an additional award of fees from ENB under Rule 11(c)(2) for the additional work Plaintiff's counsel was forced to undertake in opposing ENB's motion for reconsideration and LCvR 72.2 objections—an additional $15,430.40. (ECF No. 146-2 (summarizing "supplemental fees incurred after September 20, 2023").)[3]

Finally, on October 21, 2024, Cabrera filed another supplemental brief seeking an additional award of $7,734.10 in fees for the time counsel spent completing briefing on the fees motion(s), including the reply brief. (ECF No. 160.) This brings the total award requested by Cabrera to $193,474.45 in attorney's fees and $5,025.76 in costs. (*See id.*)[4]

---

[3] As Cabrera explains, his underlying motion (ECF No. 145) requests these fees, too, both from the Mogoo Defendants and ENB based on his status as a prevailing party. But he filed the supplemental motion for purposes of preserving an alternative basis for recovery of those fees under Rule 11(c)(2). (ECF No. 157 (asserting that "Plaintiff has two separate entitlements to claim fees from ENB" for this set of work).) Contrary to the Defendants' argument, therefore, Cabrera is not seeking a "double recovery." His point is that the Court can award this amount under one of two theories, but he is not asking to recover it twice.

[4] Cabrera seeks a slightly lesser amount from ENB—$183,168.75 in fees and $4,909.78 in costs—to reflect Judge Upadhyaya's order that ENB (and only ENB) pay Cabrera $10,421.68 in fees and costs under Fed.

## LEGAL STANDARDS

"The initial estimate of a reasonable attorney's fee is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Ventura v. L.A. Howard Constr. Co.*, 134 F. Supp. 3d 99, 105 (D.D.C. 2015) (quoting *Blum v. Stenson,* 465 U.S. 886, 888 (1984)). The applicant "bears the burden of establishing entitlement to an award, documenting the appropriate hours, and justifying the reasonableness of the rates[.]" *Covington v. Dist. of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). This requires providing "sufficiently detailed information about the hours logged and the work done ... based on contemporaneous time records," *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982), and demonstrating that the hourly rates are "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation," *Ventura*, 134 F. Supp. 3d at 105 (citing *Kattan by Thomas v. Dist. of Columbia*, 995 F.2d 274, 278 (D.C. Cir. 1993)). "When awarding attorneys' fees, federal courts have a duty to ensure that claims for attorneys' fees are reasonable." *Swedish Hosp. Corp. v. Shalala,* 1 F.3d 1261, 1265 (D.C. Cir. 1993). But courts have long recognized that "a request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart,* 461 U.S. 424, 437 (1983).

---

R. Civ. P. 11(c)(2). (*See* July 12, 2023 Min. Order; ECF Nos. 62, 123, 124.) According to Cabrera, he deducts this from the total he seeks from ENB "to avoid a double recovery." (*See* ECF No. 162 at 1 n.1.) The Court sees no need to parse things that way, however. For starters, it seems the $10,421.68 award should be long paid by now. After all, Judge Kelly denied Defendants' Rule 72 objections (after they lost reconsideration) back in August 2024. Considering that the original order directed Defendants to make payment within 45 days, that should have occurred by early- to mid-October at the latest—within 45 days after Judge Kelly denied the Rule 72 objections. Plus, even if that award has not been paid, the Court clarifies that this amount need only be paid once by Defendants, either based on Cabrera's prevailing-party status or by virtue of Rule 11(c)(2). This ruling therefore does not differentiate between the value of the award that Cabrera seeks from the Mogoo Defendants, on the one hand, and ENB, on the other.

**DISCUSSION**

As indicated, Cabrera seeks a total of about $200,000 in fees and costs from Defendants as a prevailing party, including for work performed in preparing the fees motion itself. Cabrera's filings are supported, as a general matter, by reasonably detailed billing records and accompanying descriptions of time worked, and Cabrera's briefing buckets those billing records into different categories of legal work that make up the overall request.

In response, Defendants start from the surprising position—despite agreeing that Cabrera is the "prevailing party" under the governing statutes—that the Court should deny completely Cabrera's request for fees and award nothing. They say this result should follow because of what they call an "unconscionable inflation of time and rates along with numerous billing discrepancies" by Cabrera's counsel. (Defs.' Opp'n at 4.) Otherwise, short of outright denial, Defendants press a few alternative arguments as to why the Court should reduce the requested award in different ways. The Court considers each line of attack in turn.

**I.      There Is No Basis To Completely Deny Cabrera's Motion**

The Court starts with Defendants' swing-for-the-fences salvo: the suggestion that Cabrera's fee request should be denied in its entirety. At one point, Defendants go even a step farther and say the Court should not only deny Cabrera's request, but also award Defendants their own fees and costs incurred in opposing and responding to Cabrera's filings. (Defs.' Opp'n at 1.) This proposition, certainly on the circumstances presented here, borders on the frivolous.

Beyond gesturing at this argument in a handful of spots across their briefing, Defendants never develop it in any meaningful way. There is some acknowledgment in the caselaw that an "outright denial of a fee request" may be appropriate where the court finds a request to be "outrageously unreasonable." *See, e.g.*, *Carmel & Carmel PC v. Dellis Const., Ltd.*, 858 F. Supp.

2d 43, 47 (D.D.C. 2012) (citing *LaPrade v. Kidder Peabody & Co.*, 146 F.3d 899, 906 (D.C. Cir. 1998)). But Defendants do not cite to these cases—or any others—and certainly not as part of a cogently developed argument tied to the facts of this case. Defendants' skeletal assertions come up short. *See Gov't of Manitoba v. Bernhardt*, 923 F.3d 173, 179 (D.C. Cir. 2019) ("A party forfeits an argument by mentioning it only 'in the most skeletal way, leaving the court to do counsel's work[.]'") (quoting *Schneider v. Kissinger*, 412 F.3d 190, 200 n.1 (D.C. Cir. 2005)).

This is especially true since everyone agrees Cabrera is seeking fees as the prevailing party—after all, Defendants' Rule 68 offer of judgment included this point expressly (ECF No. 141), and Defendants openly recognize it again in their opposition brief (Defs.' Opp'n at 5 ("Defendants agree that … Plaintiff is a prevailing party entitled to an award of reasonable attorneys' fees and costs.")). It is one thing for Defendants to argue for *reductions* in Cabrera's requested award based on targeted objections or particularized perceived deficiencies (as they do). But it is another thing entirely to baldly suggest the Court should refuse any award of fees and costs *entirely*, even while acknowledging Cabrera qualifies as the prevailing party based on their own Rule 68 offer. This argument is both undeveloped and disingenuous.

The Court rejects Defendants' suggestion to wholly deny Cabrera's fees and costs request.

## II.    Cabrera's Counsel's Proposed Hourly Rates Are Reasonable

Turning to Defendants' other arguments, they first contend that the hourly rates proposed by Cabrera's counsel are unreasonably excessive. Cabrera's counsel seeks reimbursement at the LSI *Laffey* rates, often dubbed the "Laffey Matrix." Defendants insist the Court should instead calculate fees based on the more recently developed "Fitzpatrick Matrix." (Defs.' Opp'n at 7–10.) Alternatively, Defendants posit that even if the Laffey Matrix applies, Cabrera miscalculates the applicable hourly rates here. (*Id.*) Defendants are wrong on both scores.

Starting with the proper matrix, Defendants agreed in their Rule 68 offer of judgment that Cabrera would be considered a prevailing party within the meaning of the DCMWA and the DCWPCL. And those statutes require that courts use the Laffey Matrix in awarding fees:

> In any judgment in favor of any employee under this section … the court shall award to each attorney for the employee an additional judgment for costs, including attorney's fees computed pursuant to the matrix approved in *Salazar v. District of Columbia*, 123 F. Supp. 2d 8 (D.D.C. 2000), and updated to account for the current market hourly rates for attorney's services.

D.C. Code § 32-1308(b)(1). "The *Salazar* court used the … *Laffey* matrix to compute the fee award, so by expressly incorporating *Salazar*, the D.C. Code incorporates the … *Laffey* matrix." *Sanchez v. Ultimo, LLC*, 2025 WL 1024970, at *3 (D.D.C. Apr. 7, 2025) (collecting cases). In other words, "D.C. law itself mandates that the Court use … Laffey rates." *Zaldana v. Morrogh*, 2022 WL 203471, at *10 (D.D.C. Jan. 24, 2022).

Resisting this conclusion, Defendants focus on the statute's directive that the matrix used to compute fees must be "updated to account for the current market hourly rates or attorney's services" and argue, in turn, that the recently created Fitzpatrick Matrix reflects such an update. (Defs.' Opp'n at 7.) The main problem with this argument, though, is that the Fitzpatrick Matrix is not actually an "update" to the Laffey Matrix. It is a new matrix altogether, as Defendants' own cited case reflects. *See J.T. v. Dist. of Columbia*, 652 F. Supp. 3d 11, 26 (D.D.C. 2023) ("Defendant urges adoption of this *new matrix* as the basis for plaintiff's requested fees in this case, in lieu of the LSI *Laffey* Matrix.") (emphasis added). And other cases bear this out, too. *See also, e.g.*, *Alavi v. Bennett*, 2024 WL 5056204, at *12 (D.D.C. Dec. 10, 2024) (describing the Fitzpatrick Matrix as "a new fee matrix," separate and distinct from the Laffey Matrix); *Klayman v. Judicial Watch, Inc.*, 2022 WL 22263805, at *20 (D.D.C. Oct. 25, 2022) (similar). As a new matrix, the Fitzpatrick Matrix is simply not the same framework the D.C. Council incorporated into law. This takeaway is fortified by Defendants' failure to cite to any cases applying the Fitzpatrick Matrix to fees

awarded under the D.C. wage statutes. By contrast, and as Cabrera rightly notes, judges in this District (including the undersigned) have continued to use the Laffey Matrix—not the Fitzpatrick Matrix—in shaping recent fee awards under the DCMWA and DCWPLCL. (Pl.'s Reply at 7.)[5]

This Court certainly acknowledges that the Laffey Matrix, now decades after its adoption, is facing some criticism as to its ongoing usefulness in reflecting prevailing market rates today. *See, e.g.*, *DL v. Dist. of Columbia*, 924 F.3d 585, 594 (D.C. Cir. 2019) ("[A]s time passes, the *Laffey* matrix may well—like shoulder pads, eight-tracks, and other '80s fads before it—be losing its shine."). Indeed, judges in this District are increasingly using the Fitzpatrick Matrix in lieu of the Laffey Matrix as a more faithful barometer of reasonable market rates in the D.C. community, at least in cases that do not implicate the DCMWA and the DCWPCL. *See, e.g.*, *J.T.*, 652 F. Supp. 3d at 31–36 (detailing the Fitzpatrick Matrix's various perceived strengths over the Laffey Matrix in reflecting "the more appropriate measure of the prevailing market rates"); *Alavi*, 2024 WL 5056204, at *13 (agreeing that the Fitzpatrick Matrix "is a superior reflection of reasonable rates" versus the Laffey Matrix); *Brackett v. Mayorkas*, 2023 WL 5094872, at *4-5 (D.D.C. Aug. 9, 2023).[6] Given this shifting landscape, it may be worthwhile for the D.C. Council to revisit the governing statutory scheme to consider substituting the Fitzpatrick Matrix for the Laffey Matrix to compute fee awards. But until that occurs, the Court is bound by the statute as it stands.

Next, Defendants alternatively argue that even if the Court uses the Laffey Matrix to determine prevailing hourly rates, Cabrera's counsel is applying the Laffey Matrix incorrectly.

---

[5] Moreover, though not dispositive, the Court notes that Judge Upadhyaya, when ordering ENB to pay attorney's fees to Cabrera under Rule 11(c)(2), previously found that the Laffey Matrix rates reflected reasonable hourly rates for Cabrera's counsel's work in this case. (*See* ECF No. 124 at 3–4.)

[6] The Court recognizes that the law firm awarded fees in *Brackett* is the same law firm representing Cabrera here, and that Judge Boasberg used the Fitzpatrick Matrix instead of the Laffey Matrix to derive the appropriate prevailing market rates for those lawyers in *Brackett*—including many of the same lawyers seeking fees here. But unlike here, *Bracket* did not implicate a statutory mandate to use Laffey Matrix rates; *Brackett* involved claims brought under the federal Rehabilitation Act, not the D.C. wage statutes.

Beyond generalities, though, the only specific argument they make on this point is that Mr. Balashov's rate should be lower because he was not admitted to the bar until December 2015. (*See* Defs.' Opp'n at 9). The Laffey Matrix does not turn, however, on the date of a lawyer's bar admission, but rather "years out of law school," calculated "from June 1 of each year." (ECF No. 145-10 at 1 & n.*.) Defendants' argument is premised on the wrong metric, and the rates proposed for Mr. Balashov and the other lawyers seeking fees are properly substantiated and calibrated to the Laffey Matrix based on each timekeeper's years out of law school.

All told, given the specific claims on which Cabrera is adjudged to have prevailed, the Court finds the hourly rates requested by Cabrera's counsel to be reasonable and appropriate, specifically (*see* Pl.'s Mem. at 8): $1,057 for both Omar Melehy and Suvita Melehy, $777 for Andrew Balashov, $538 for Alexandre Todorov, and $239 for the firm's paralegals.

## III.    Cabrera's Counsel's Requested Hours Are Largely Reasonable

From the proposed hourly rates, the Court turns next to the number of hours for which Cabrera seeks an award of fees—approximately 400 hours total, reduced by fees already paid to Cabrera by other parties in settlement. (ECF No. 145-2 at 1.) Cabrera's counsel represent that, in preparing their petition, they reviewed their billing records and exercised judgment to exclude a meaningful number of time entries from their request—including "all time associated with 9 timekeepers," time spent by multiple timekeepers in meetings (charging only for the most senior participating attorney), time spent "reviewing routine court filings," time spent by more than one lawyer attending conferences and hearings (again, charging only for the most senior participating attorney), and more. (Pl.'s Mem. at 9.) Cabrera's counsel also aver that they excluded fees spent exclusively pursuing defendants that Cabrera voluntarily dismissed. (*Id.*) These combined

reductions exceed $74,000. Additionally, counsel applied percentage reductions to certain categories of time, resulting in a further reduction of about $7,000. (*See id.* at 10.)

Against this backdrop, Defendants press a few different arguments for reducing the fee award even more. They contend that the Court should decline to award any fees at all for time incurred after Cabrera rejected their June 2023 offer of judgment (valued at $70,000) because, by their telling, Plaintiff's counsel spent upwards of $130,000 in fees "pursuing a $5,000 increase" in the settlement value before accepting the July 2024 offer of judgment (valued at $75,000). (Defs.' Opp'n at 2–3, 7 & 10 n.3.) Defendants separately fault Cabrera's counsel for attempting to recover fees from the Mogoo Defendants and ENB for time spent pursuing other general contractors. (*Id.* at 10–11.) And finally, Defendants tick through a handful of what they call "illustrative examples" of Cabrera's counsel's alleged "failure to exercise proper billing judgment." (*See id.* at 12–14.) The Court evaluates each set of arguments in turn.

### A.    Fees Between June 2023 and July 2024 Rule 68 Offers

Defendants first insist that Cabrera's counsel "needlessly racked up" fees by refusing to accept their June 2023 offer of judgment and then litigating for another year, since the offer they ultimately accepted in July 2024 only increased by $5,000. (Defs.' Opp'n at 3.) As Defendants put it, "72% of Plaintiff's attorneys' fees were incurred pursuing $5,000," which they label as unreasonable. (*Id.*) Cabrera says otherwise. He starts by contesting Defendants' calculations, rejoining that counsel spent about $40,000 less than Defendants posit during the year between the two Rule 68 offers at issue. Cabrera also explains that the additional value reflected in the July 2024 offer exceeded $15,000 (not simply $5,000), including because the prior offer would have extinguished his claims against all defendants (not just the Mogoo Defendants and ENB); this may have precluded Cabrera's ability to recover $10,000 in settlement from Plano-Coudon in May

2024, as well as the remaining prospect of future recovery from K L Development. And finally, Cabrera argues that even if the economic value did only increase by $5,000, that is no mere pocket change to Cabrera—it is equivalent to nearly seven weeks of his prior pay with Mogoo.

The Court sees, at least at some level, the superficial basis for Defendants' penny-wise-pound-foolish argument—*i.e.*, that to obtain a seemingly modest increase in the settlement amount, Cabrera's counsel expended many times that amount in fees. But this does not provide a valid reason to deny or reduce Cabrera's requested fees here. For one thing, as a general matter, fee awards need not "necessarily be proportionate to the amount of damages" recovered. *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986). As the Supreme Court and our Circuit have recognized, "[a] rule of proportionality would make it difficult, if not impossible, for individuals with meritorious … claims but relatively small potential damages to obtain redress from the courts." *Id.*; *see also Williams v. First Gov't Mortg. & Invs. Corp.*, 225 F.3d 738, 747 (D.C. Cir. 2000) (recognizing same); *see also Radtke v. Caschetta*, 254 F. Supp. 3d 163, 172 (D.D.C. 2017) ("[A] rule of strict proportionality is inconsistent with the policy objectives of the fee-shifting provision of the FLSA."). These principles undercut Defendants' argument here, especially since they fail to cite even a single case (or any other authority) that applied a fee reduction in analogous circumstances. Plus, the relative value of Cabrera's *overall* recovery ($75,000) to the *overall* fees and cost requested (about $200,000)—which the Court finds a more meaningful measure—is nowhere near as out of step as would appear true based on Defendants' focus on the June 2023 to July 2024 timeframe. Finally, Defendants' argument rings somewhat hollow based on their own litigation choices. In choosing to litigate this matter aggressively—including, for instance, by perpetuating a Rule 11 motion "without meaningful justification" (ECF No. 62 at 8)—Defendants

bear at least some responsibility for the predicament in which they claim to find themselves, since they forced Cabrera's counsel to expend more time and fees responding to their efforts.[7]

## B.    Fees Pursuing Other Contractor Defendants

Defendants separately argue that Cabrera should not recover fees his counsel incurred exclusively in pursuit of claims against other contractor defendants. In so arguing, Defendants call out various categories of work and point to highlighted entries they contend warrant exclusion on this basis, including "responding to other parties' pleadings," "engaging in discovery with other defendants," and "responding to motions brought by other defendants." (Defs.' Opp'n at 10–11.) In response, Cabrera stresses that within the entries that Defendants highlight on this basis, counsel already excluded nearly $20,000 from the request voluntarily; so far as the Court can tell, these exclusions are attributable to parties Cabrera voluntarily dismissed. Beyond that, Cabrera points out that he applied 10% categorical reductions for time spent on "factual investigation" and "discovery disputes," ostensibly to account for this issue to some extent, but Cabrera otherwise defends the request to recover "non-segregable time" spent in pursuit of other contractors. The Court appreciates counsel's proactivity, but it agrees with Defendants that additional reductions are warranted. Specifically, other hours that are exclusively attributable to other defendants—*e.g.,* time opposing K L Development's motion for summary judgment—were not reasonably expended in pursuit of the judgment Cabrera obtained against the Mogoo Defendants and ENB. Those amounts should be excluded from the award.

In response, Cabrera suggests that both the D.C. Code and the terms of the Rule 68 offer allow for recovery for fees expended pursuing other general-contractor defendants. The Court

---

[7] Judge Upadhyaya made this point already. (*See* ECF No. 124 at 2 n.2 ("In light of ENB's argument that Cabrera's fees and costs are 'unreasonable and excessive,' ENB might reconsider in the future whether an argument such as this one (to which Cabrera must expend fees to respond) is worth making.").)

disagrees. As to the first argument, Defendants invoke D.C. Code §§ 32-1012(c) and 32-1303(5) to argue that the general contractors are jointly and severally liable for Mogoo's potential wage violations, since Mogoo was their subcontractor. But the statutes impose vicarious liability in the opposite direction: "A subcontractor, including any intermediate subcontractor, and the general contractor shall be jointly and severally liable to the subcontractor's employees *for the subcontractor's violations of this chapter*." D.C. Code § 32-1012(c) (emphasis added); *id.* § 32-1303(5) (same); *see also Bonilla v. Power Design Inc.*, 201 F. Supp. 3d 60, 65 (D.D.C. 2016) (explaining that the laws "make general contractors … vicariously liable for wage payment violations by their subcontractors"). In other words, the statutes could provide a basis to impose vicarious liability on the general contractors for the Mogoo Defendants' wage violations, but that is not what Cabrera is arguing—he wants vicarious liability to flow the other way. He fails, however, to explain how these statutes allow him to hold the Mogoo Defendants and ENB, as subcontractors, liable for fees expended pursuing claims against general contractors.

As to the second argument focused on the Rule 68 offer, its terms provided that the Mogoo Defendants and ENB would be jointly and severally liable among themselves; but the offer does not provide a basis to seek fees incurred pursuing claims against other contractor defendants, whether dismissed or not, and Cabrera does not explain why he believes otherwise.[8]

The undersigned therefore finds it appropriate to exclude time spent solely in pursuit of other defendants from an award of fees and costs to be paid by the Mogoo Defendants and ENB.

---

[8] Cabrera is still actively litigating against K L Development, so it would at least seem that he remains free to pursue uncovered fees against K L Development down the road. The Rule 68 offer explicitly leaves this path open: "This Offer, if accepted, has no effect on Plaintiff's claims for damages or attorneys' fees and costs against … K L Development, LLC[.]" (ECF No. 141-1 at 3.) The same may hold true as to the defaulted contractor defendants, as well, but the Court expresses no definitive view on those issues here.

The Court specifies the corresponding reductions in the sections that follow, in conjunction with resolving Defendants' other categorical-based objections to Cabrera's requested fees.

### C.    Defendants' Arguments Based on Category

Next, Defendants argue against the reasonableness of the hours Cabrera's counsel expended on certain categories of legal work. The Court discusses each of those categories next.

*Discovery*. Defendants first take aim at discovery-related activity because, as they put it, Cabrera's counsel spent a "shocking" 97.6 hours on discovery. (Defs.' Opp'n at 12–13.) This argument misses the mark. For starters, as Cabrera points out, even though counsel may have *incurred* 97.6 hours on discovery, counsel only *seeks to recover* fees for 72.9 hours of time spent (so, already a 25% reduction on the hours Defendants call "shocking"). Further, other than pointing out that no depositions took place in the case, Defendants fail to develop their generalized argument about the overall discovery hours at issue. They do not point to any specific time entries they contend are unreasonable or excessive, and they fail to suggest any lesser amount they believe the Court should award. In evaluating objections of unreasonableness in the context of fee petitions like this one, the Court requires that the objecting party present "detailed and specific reasons why the applicant's request should be reduced or denied." *Brackett*, 2023 WL 5094872, at *7; *Beck v. Test Masters Educ. Servs., Inc.*, 73 F. Supp. 3d 12, 17 (D.D.C. 2014) (same). Defendants largely fail to do so. At most, they cite to *Guillen v. Armour Home Improvement, Inc.*, 2024 WL 1346838 (D. Md. Mar. 29, 2024), to argue—in broad strokes—that the "simplicity" of the case did not warrant so much discovery work. *Id.* at *8. But even in *Guillen*, the court still awarded most of the discovery-related fees after applying a 40% categorical reduction based on the particulars of the case. Here, Cabrera's counsel already applied a voluntary 25% reduction in exercising billing judgment, which itself brings the starting premise here reasonably close to the end result there.

Plus, it seems that this case encompassed more written discovery work than may have been true in *Guillen*, including because of the number of additional defendants, the disputed question of "employer" status as to most of them, and more.[9] On this record, at least without more particularized objections, the Court sees no basis to reduce the requested discovery hours based on the general argument that the overall time was "shocking."

For the reasons explained above, however, the Court does believe that a handful of entries in the discovery category that were highlighted by Defendants should be excluded because they pertain exclusively to fees that were incurred pursuing claims against other general-contractor defendants, including K L Development, Fabion Construction, and others. These excluded entries total 1.5 hours amounting to $952.50.[10]

***Clerical Activities***. Defendants next accuse Cabrera's counsel of improperly billing for clerical activities such as "calendaring and scheduling," "leaving messages," "filing documents," and "preparing binders." (Defs.' Opp'n at 13.) The Court agrees that these sorts of clerical tasks

---

[9] As Cabrera explains it, even after the Mogoo Defendants supplemented their discovery responses three times, he was still unable to pinpoint the relevant contractors for the jobs he worked or even records of his own specific work hours, so he was required to subpoena Mogoo's bank and insurance company (to identify the former) and his own mobile phone providers (to help identify the latter), alongside other written discovery. Further, although no depositions ultimately took place, Cabrera states that counsel noted several depositions and began preparing for them before they were postponed.

[10] The specific entries excluded, in chronological order, are as follows: 9/28/2023: EW 0.4 ("Correspond with new Defendant K L Development regarding the lawsuit, the imposition of the litigation hold, and notifying them what types of documents must be preserved."); 10/5/2023: EW 0.1 ("Correspond with Defendant Fabion Construction regarding the complaint, their obligation to preserve electronically store information and other discovery materials, the attorneys' lien, and other case-related information."); 5/15/2024: SM 0.1 ("Speaking to Mr. Balashov about Mr. Peacock's proposed stipulation.") and AB 0.5 ("Reviewing and drafting a long response to Mr. Peacock's email to explain why his legal position is wrong, and citing to support our position."); 5/28/2024: AB 0.1 ("Correspond with Mr. Peacock about the protective order and agree to the terms before I can send him the Mogoo documents as they are confidential."); 6/5/2024: AB 0.2 ("Drafting email to Mr. Peacock explaining why his admissions requests are not properly served, and should not have been served because the case is stayed and discovery is closed.") and SM 0.1 ("Review Defendant K L Development's request for admissions to Plaintiff."). (*See* ECF No. 151-5 at 28–29.) Many entries highlighted by Defendants were for amounts "no charged"—*i.e.*, fees that counsel does not seek—so the Court need not consider them.

are not legal work that can be recoverable through a fee petition. After all, "[h]ours that are not properly billed to one's client also are not properly billed to one's adversary[.]" *Hensley*, 461 U.S. at 434. But Cabrera agrees with this point, too. Indeed, of the three entries Defendants highlight, Cabrera excluded them all from his request. Defendants fail to identify any other entries that they contend reflect clerical work. From the Court can tell, then, this argument is pure makeweight.

*Settlement*. Next, Defendants argue that Cabrera's counsel seeks excessive fees for settlement-related activities, including time spent mediating and negotiating with other defendants. (Defs.' Opp'n at 13-14.) As before, in making this argument, Defendants inexplicably cite to the total amount of billing hours *incurred* by Cabrera's counsel in this category (76.9 hours) versus the amount of billing hours Cabrera *seeks* after voluntary reductions (55.8 hours). This tactic remains unavailing. Otherwise, Defendants mainly argue they should not be on the hook for fees that Cabrera's counsel expended exclusively in pursuit of settlement with Plano-Coudon and K L Development. For the reasons explained above, this argument carries. Defendants fail to tally up this bucket of activity, but from the Court's own legwork in reviewing the entries that Defendants highlighted related to those other parties, the entries total 10.2 hours and $9,733.80.[11] Because

---

[11] The specific entries excluded, in chronological order, are as follows: 1/4/2024: AB 0.1 ("Communicate with counsel for Plano Codon regarding settlement."); 1/23/2024: AB 0.2 ("Correspond with opposing counsel (Mr. Sortenberg and Mr. Peacock) separately about the mediation and whether they will agree to mediate."); 1/26/2024: AB 0.1 ("Drafting email to Judge Teel regarding status and email I received from K L Development.") and AB 0.1 ("Reviewing email from Stuart Peacock about mediation."); 3/19/2024: AB 0.4 ("Drafting settlement demand to Defendant Plano Coudon."); 4/3/2024: SM 0.1 ("Conference with Ms. Wilson about client's settlement demand and his damages as to K L Development."); 4/4/2024: AB 0.6 ("Drafting settlement demand to Stuart Peacock for K L Development.") and AB 0.1 ("Reviewing email from Judge Teel regarding settlement demand to K&L Development."); 4/5/2024: SM 6.5 ("Attend mediation – Met with client during breaks in mediation and at the end of mediation to discuss Tax Identification Information for settlement with Defendants Plano Coudon."); 4/9/2024: AB 0.9 ("Drafting settlement agreement with Plano-Coudon."); 4/10/2024: SM 0.2 ("Telephone conversation with Stuart Peacock, Esquire regarding settlement."); 4/18/2024: AT 0.1 ("Drafting correspondence to Stuart Peacock, Esquire concerning Plaintiff's settlement demand.") and AT 0.3 ("Drafting Plaintiff's settlement demand to Defendant K L Development, LLC."); 5/8/2024: AB 0.2 ("Drafting long email to opposing counsel for K L Development rejecting his counteroffer … and proposing a new offer and other terms."); 6/4/2024: AB 0.1 ("Speaking to the client to convey K L's renewed settlement offer … for the client, inclusive of

17

those fees were not reasonably expended in pursuit of the judgment Cabrera obtained against these Defendants by virtue of the Rule 68 offer—and is plainly segregable from the sort of collective work that may justify recovery (whether full or partial) in other circumstances—the undersigned recommends that the Court reduce Cabrera's requested fee award by this amount.

***Discovery Disputes and Motions Practice***. Defendants also decry the time Cabrera's counsel billed for discovery disputes and motions practice. In what the reader will recognize as a theme by this point, Defendants again reference the hours *billed* (76.7 and 99.7, respectively) versus the hours *sought* (66.06 and 81.7, respectively). The Court focuses on the latter.

Within these categories, Defendants say little about the allegedly excessive discovery-dispute time except that "there was only one motion to compel brought before the Court." (Defs.' Opp'n at 14.) True enough. But this oversimplifies things considerably. As Cabrera explains, the relevant time entries likewise encompass work *prior* to any motions practice, including deficiency letters, reviews of supplemental responses, and various conferrals. Plus, the "one motion to compel" was the subject of three hearings before Judge Upadhyaya, each of which would have required Cabrera's counsel to expend time to prepare and appear for the proceedings. With that full context, Defendants' generalized and superficial complaints, tied to the number of hours alone, fail to demonstrate the unreasonableness of Cabrera's request. Defendants do not otherwise enumerate any specific time entries they contend were unreasonable or excessive.

Earlier in their response brief—in the background discussion but not the argument section—Defendants suggest Cabrera's counsel should not recover fees associated with the motion to compel because the court declined at that time to award fees under Rule 37. (*See* Defs.' Opp'n

---

attorneys' fees and costs."); and AB 0.1 ("Reviewing email from Stuart Peacock conveying a renewed settlement demand … inclusive of attorneys' fees and costs."); 6/5/2024: AB 0.1 ("Correspond with Mr. Peacock to reject his renewed demand and provide a counter offer and terms."). (ECF No. 151-5 at 32–35.)

at 3 (contending that the court already "denied Plaintiff's motion for attorney [sic] fees and costs incurred in that motion," but "Plaintiff defiantly now claims them here").) Beyond that passing statement, though, Defendants fail to develop this point, much less with the backing of case support or other relevant authority. For his part, Cabrera rejoins that Judge Upadhyaya only held that a fee award was not appropriate for either side (the discovery ruling was somewhat of a split decision) under the standards of Rule 37 but "did not pass judgment on the reasonableness of those fees" or foreclose recovery later in the case. (ECF No. 156 at 14–15.) The Court finds Cabrera's position more persuasive, at least on the record here. The relevant order denied fees and costs on the basis that both sides "ha[d] acted inconsistent with their discovery obligations" (ECF No. 80 at 4), but the Court did still grant Cabrera's motion in substantial part, which demonstrates that the underlying legal work was not unreasonably expended. And Judge Upadhyaya did not pass on— or even really mention—the reasonableness of the hours expended in her ruling, as Cabrera observes. For these reasons, and especially absent a more developed and particularized argument from Defendants on this point, the Court declines to exclude this time from an award.

As to time spent on "motions practice," Defendants' argument is similarly surface-level, resting on the proposition that it is "not reasonable to spend close to 100 hours on three opposed motions, and template motions to extend." (Defs.' Opp'n at 14.) The Court is unpersuaded. For one thing, Cabrera is not seeking reimbursement for the full 99.7 hours billed—as Defendants' argument presupposes—but rather only about 82 hours. This is not an obviously unreasonable amount of time for three opposed motions, particularly for the moving party who ends up filing two briefs (the opening brief and the reply) and particularly since the Court held hearings on several of these motions, which requires additional time to prepare and appear for argument. Further, as Cabrera observes, he was practically forced to oppose Defendants' failed Rule 11

motion three times—through the original opposition, in response to the motion for reconsideration, and in response to the Rule 72.2 objections. So as above, the Court is unpersuaded by Defendants' generalized assessment that the overall hours, in the abstract, are unreasonable.

But as in the settlement bucket, Cabrera's counsel does seek recovery for motions-related work focused exclusively on other defendants, including considerable time opposing K L Development's motion for summary judgment. For the same reasons explained above, the Court does not believe Cabrera established a basis to seek recovery of these fees against these defendants. The Court's review indicates that counsel spent 18.8 hours totaling $11,475.30 on summary-judgment-related activity as to claims against K L Development, and the undersigned therefore recommends that these amounts be excluded from any award. Likewise, Cabrera seeks fees for time spent on other motions practice related exclusively to other defendants, including several defendants found in default (*e.g.*, Cole Group, RFP, and Fabion. This work was far more limited, totaling 1.7 hours at $1,159.50, but the undersigned recommends excluding these amounts, too.[12]

---

[12] The specific entries excluded, in chronological order, are as follows: 8/21/2023: AB 0.2 ("Reviewing and editing the motion for default judgment as to Cole Group.") and EW 0.1 ("Draft request for clerk's entry of default as to Defendant Cole Group."); 10/10/2023: AB 1.0 ("Drafting motion to extend time to serve three Defendants."); 11/8/2023: AB 0.1 ("Reviewing the praecipe prepared by K L Development to extend time to answer."); 1/15/2024: AB 0.4 ("Reviewing two requests for default as to RLP and Fabion."), EW 0.1 ("Draft motion for clerk's entry of default as to Fabion Construction LLC."), and EW 0.1 ("Draft Plaintiff's motion for clerk's entry of default as to Defendant RLP Investment Group."); 3/27/2024: AB 0.2 ("Reviewing K and L's motion for summary judgment."); 3/28/2024: AB 0.1 ("Speaking to Stuart Peacock about the motion for summary judgment and records for K and L regarding Mogoo jobs."); 4/8/2024: AB 0.1 ("Speaking to Stuart Peacock about the extension of time to oppose summary judgment motion.") and EW 0.4 ("Prepare Plaintiff's motion to extend time to file its opposition to Defendant KL's motion for summary judgment."); 4/19/2024: AT 0.1 ("Corresponding with Stuart Peacock, Esquire, concerning Plaintiff's second motion to extend his deadline to respond to Defendant KL's motion for summary judgment."); and AT 0.2 ("Drafting Plaintiff's second motion for extension of time to respond to Defendant KL's motion for summary judgment."); 5/9/2024: AT 0.9 ("Drafting Plaintiff's opposition to Defendant K L's motion for summary judgment."); 5/10/2024: AT 0.4 ("Completed drafting Plaintiff's opposition to K&L's motion for summary judgment.") and AT 0.1 ("Drafting proposed order for Plaintiff's opposition to Defendant K&L's motion for summary judgment."); 5/13/2024: AT 1.6 ("Significantly revising plaintiff's opposition to Defendant K&L's motion for summary judgment."), AT 0.5 ("Final round of revision to Mr. Cabrera's opposition to K&L's motion for summary judgment."), AT 0.4 ("Final review and revision of Plaintiff's opposition to K L's motion for summary judgment."), OM 0.3 ("Speaking with

*Translation*. Finally, Defendants argue that Cabrera improperly seeks reimbursement for time that the firm's paralegals spent translating. They insist this is nonlegal work. (Defs.' Opp'n at 14.) Neither side points to any cases from our Circuit on the question of whether translating constitutes "legal work" and, if so, how it should be treated. Defendants fail to offer any case support at all, whereas Cabrera cites a few decisions from the District of Maryland that awarded fees for paralegal translation time, albeit at a far lesser rate of $95 per hour.[13]

Start with the big-picture question of whether translation activities can be compensable as legal work at all. Based on the Court's own research, some courts have held broadly that "[t]ranslation … is not legal work," *Run Guo Zhang v. Lin Kumo Japanese Rest. Inc.*, 2015 WL 5122530, at *3 (S.D.N.Y. Aug. 31, 2015), while others have declined to adopt such a "hard line" rule because "sometimes translation does require legal work," *Aguayo v. Bassam Odeh, Inc.*, 2016 WL 7178967, at *6 (N.D. Tex. Dec. 8, 2016). The undersigned finds the latter view more realistic. Some translation work may be purely clerical, but the Court agrees with Magistrate Judge Simms in the District of Maryland who found translating activities to be legal (or at least quasi-legal) when they "aid[ed] the attorneys in communicating with the client." *Molina*, 2021 WL 2805838,

---

Mr. Todorov concerning Plaintiff's opposition to K&L's motion for summary judgment."), and OM 2.0 ("Reviewing and editing opposition to K&L's motion for summary judgment on limitations grounds."); 5/29/2024: AT 0.2 ("Reviewing the reply filed by K L Development in support of its motion for summary judgment."); 6/3/2024: AT 0.1 ("Corresponding with Stuart Peacock, Esquire, concerning whether K L opposes Plaintiff's motion for leave to file a surreply."), AT 0.5 ("Drafting Plaintiff's motion for leave to file a surreply."), AT 0.1 ("Drafting Plaintiff's proposed order for his motion for leave to file surreply."), and AT 4.0 ("Drafting Plaintiff's surreply to Defendant K L's motion for summary judgment."); and 6/4/2024: AT 0.2 ("Final revising of Plaintiff's motion for leave to file surreply."), AT 0.8 ("Revising Plaintiff's surreply to K L's motion for summary judgment."), AT 1.2 ("Final revising of Plaintiff's surreply to Defendant KL's motion for summary judgment."), and AB 0.8 ("Drafting my declaration in support of motion for leave file a surreply in response to new argument raised by K L in its reply."). Once again, many of the entries Defendants highlighted in this category (*see* ECF No. 141-5 at 41–46) represent time *incurred* but not *requested*, so the Court need not address those entries.

[13] *See, e.g.*, *Carranza v. Ramirez*, 2022 WL 4080310 (D. Md. Sept. 6, 2022); *Molina v. KP Stoneymill Inc.*, 2021 WL 2805838 (D. Md. July 6, 2021) (cited at ECF No. 156 at 17).

at *7. Based on the Court's review of the billing entries related to translation work here, this was the thrust of what the firm's paralegals were doing in this case. Given that, and especially in the absence of contrary case authority from Defendants, the Court finds the interpreting time requested to be compensable. And as to the rates, if the Court were fixing rates on a clean slate, it would likely be inclined to award something closer to the $95 per hour approved by the District of Maryland. But to return to the discussion above, this case is governed by the DCMWA and the DCWPCL, and those statutes dictate the use of Laffey rates—here, $239 per hour for paralegals.

On the record here, the Court finds these requested fees reasonable and declines to exclude or reduce them for the reasons argued, save for 0.6 hours totaling $143.40 requested for time associated with work exclusively focused on claims against another defendant, Plano-Coudon.[14]

*    *    *

As a final point, Defendants malign Cabrera's counsel in a closing paragraph on the basis that they supposedly "overstaffed and overbilled this simple wage violation lawsuit." (Defs.' Opp'n at 15.) In doing so, Defendants point to past cases where other courts have criticized counsel's billing practices. But simply pointing to prior rulings is no substitute for explaining how those same alleged problems plagued the case at hand. And as the above discussion reflects, Defendants largely failed to connect those dots here. As to "overstaffing," the Court recognizes that Cabrera seeks fees billed by four different attorneys (two partners and two associates), but that staffing approach is not facially unreasonable barring duplicative, overlapping, or otherwise unreasonable work by multiple attorneys, and Defendants fail to point to any time entries they contend to be reflective of those dynamics here. And as to "overbilling," the Court's discussion

---

[14] The entries are: 4/11/2024: ATE 0.2 ("Translating settlement agreement with Plano-Coudon.") and ATE 0.4 ("Reading the Plano-Coudon settlement agreement to Mr. Moreno Cabrera."). (ECF No. 141-5 at 18.)

above—in the context of the concrete arguments presented by Defendants—suffices to resolve those potential concerns. In short, the Court agrees that certain hours are not properly recoverable from *these defendants*, as explained. But beyond those problems, the Court disagrees that Cabrera's counsel "overbilled" or seeks unreasonable fees, at least in the wake of the voluntary reductions they proactively excluded from their request in an exercise of judgment.[15]

## IV.     Cabrera's Supplemental Fee Requests

The Court now turns to Cabrera's two supplemental briefs—one seeking $15,430.40 for additional work associated with the Rule 11(c)(2) fee award (ECF No. 146), and another seeking an additional $7,734.10 associated with preparing the fee petition reply (ECF No. 160).

As to the first supplement, Cabrera explains that these amounts were included in his underlying fee petition (ECF No. 145), but he separately filed the supplemental motion to preserve his entitlement to those fees on an alternative theory under Fed. R. Civ. P. 11(c)(2). The Court concludes those fees are reasonable and appropriately awarded, whether on a prevailing-party theory as originally requested or under Rule 11(c)(2) as alternatively requested. Defendants do not offer any specifics as to why the time expended was unreasonable or should otherwise be excluded, beyond stating that Cabrera should not receive a "double recovery." He will not. The Court awards these fees only once, albeit under different theories, so Defendants need only pay them once.

As to the second supplemental filing, the Court agrees that Cabrera is entitled to recover reasonable fees expended in substantiating his request for fees—*i.e.*, "fees for fees." *See, e.g.*, *Am. Fed'n of Govt. Emps., AFL-CIO, Local 3882 v. Fed. Labor Relations Auth.*, 994 F.2d 20, 22 (D.C.

---

[15] The undersigned recognizes there may be other billing entries solely attributable to hours pursuing claims against parties other than the Mogoo Defendants and ENB. But it was incumbent on Defendants to call out those concerns in detail and with specificity. *Brackett*, 2023 WL 5094872, at *7; *Beck*, 73 F. Supp. 3d at 17. As shown above, the Court worked through the time entries in the categories Defendants identified as being "illustrative" (Defs.' Opp'n at 12–15), but to the extent Defendants wished to object to other categories or specific entries, they needed to be more than merely "illustrative."

Cir. 1993). The Court's review of the relevant entries, after counsel's voluntary reductions, reflects that the hours expended were reasonable and reasonably incurred. Defendants' response (ECF No. 162) is a complete non-sequitur. Defendants essentially just regurgitate their broader arguments as to why the requested fee award, overall, should be denied or reduced, but they fail to explain why the specific fees requested in the supplement—hours spent preparing the fee petition reply—should be excluded. The Court finds those fees properly recoverable.

## V.     Cabrera's Requested Costs Are Partially Recoverable

As to Cabrera's requested costs, these total $5,025.76 and fall into one of several buckets, including filing fees, photocopying, postage, legal research, service of process, and travel reimbursement. (ECF No. 145-9.) These types of costs are generally recoverable. Fed. R. Civ. P. 54(d)(1); LCvR 54. And Defendants do not argue—certainly not with any detail or specificity— why these costs are inappropriate here. At most, Defendants state in passing, in the introduction of their brief but not the argument section, that Cabrera's counsel seeks to recover costs associated with other defendants exclusively, not the Mogoo Defendants or ENB. (Defs.' Opp'n at 4.)

Despite the relatively skeletal nature of this argument, it tracks the Court's concerns with respect to several categories of fees, so the Court finds it appropriate to exclude costs that are solely attributable to Cabrera's pursuit of claims against other defendants. Some cost categories are easily segregable on this basis. For instance, Cabrera requests $724 in "service of process" costs, but except for one $80 invoice associated with service of ENB, those costs are all tied to other contractor defendants. The remaining such costs, totaling $664, should be excluded. The photocopying, postage, and research categories, by contrast, are not described with enough specificity to be segregable in the same way. Instead, the Court recommends applying a 50% reduction to those categories to account for costs attributable to other defendants. *See, e.g.*, *Fox v.*

*Vice*, 563 U.S. 826, 838 (2011) ("The essential goal ... is to do rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates[.]"). This means awarding $1,194.10 for photocopying costs, $242.49 for postage costs, and $508.89 for legal research costs. That leaves the filing fee of $402 and an $8.80 travel-related expense attributable to Abril Tingey in January 2024. The filing fee is recoverable, but the travel expense is not appropriately substantiated. Cabrera does not explain the reason for this travel, and the Court's review of the billing records did not reveal any time entries by Ms. Tingey around that timeframe that would provide context. The Court recommends denying this cost.

Summing up, the Court recommends awarding costs as follows: $402 in filing fees, $1,194.10 for photocopying, $242.49 in postage costs, $508.89 in research costs, and $80 in service of process fees. This totals $2,427.48 in recoverable costs.

## CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the Court **GRANT** Cabrera's motions (ECF Nos. 145, 146, 160) in substantial part and award attorney's fees in the amount of **$170,009.95** and costs in the amount of **$2,427.48**.[16] The undersigned clarifies that the fees and costs associated with Defendants' unsuccessful Rule 11 motion (and subsequent motions practice related to that issue) are only being awarded once and need only be paid once; if they have already been paid in whole or in part, that amount should be deducted from the overall award.

Dated: May 8, 2025

_____
            MATTHEW J. SHARBAUGH
            United States Magistrate Judge

---

[16] The Court tabulates the final fee award by taking the proposed total fees of $193,474.45 and subtracting the exclusions and reductions discussed above—$952.50 on discovery, $9,733.80 on settlement, $11,475.30 and $1,159.50 on motions practice, and $143.40 on translation—amounting to $23,464.50.

\*     \*     \*

The Court hereby advises that, pursuant to 28 U.S.C. § 636(b)(1)(C) and LCvR 72.3(b), any party who objects to a report and recommendation must file a written objection within fourteen (14) days of the party's receipt of the report and recommendation. The written objections must specifically identify the portion of the report or recommendation to which objection is made and the basis for such objections. Failure to file timely objections to the findings and recommendations set forth in this report may waive that party's right of appeal from an order of the District Court that adopts such findings and recommendation. *See Thomas v. Arn*, 474 U.S. 140 (1985).